Joseph J. MINGOLLA, II, Mary Francis Mingolla, Individually and on Behalf of the Estate of Joseph Mingolla, Sr., Mary Ann Whitney, and Kay Frances Wardrope, Plaintiffs,

v.

The MINNESOTA MINING AND MANUFACTURING COMPANY and X, Y, and Z, as yet unidentified, Defendants.

Civ. No. 1993–0188.

District Court, Virgin Islands, Division of St. Thomas and St. John.

June 30, 1995.

500

David C. Indiano and Stuart Weinstein–Bacal, Indiano, Williams & Weinstein–Bacal, San Juan, PR, for plaintiffs.

Joel W. Marsh and Phillip L. Husband, Law Offices of Joel W. Marsh, St. Thomas, VI, for defendants.

## *MEMORANDUM*

MOORE, Chief Judge.

In this case, we are called upon to decide several issues of first impression in this district. After careful consideration of the respective arguments, we conclude that a) the appointment of the personal representative in this case related back to the commencement of the suit under Rule 15(c)(2) of the FEDERAL RULES OF CIVIL PROCEDURE; b) the adult children of the decedent in this case cannot recover either under the V.I. Wrongful Death Act, V.I. CODE ANN. tit. 5, § 76 (Supp.1994) ("VIWDA") or under the RESTATEMENT (SECOND) OF TORTS §§ 402A, 436, or 436A (1965); c) neither attorneys fees and costs nor punitive damages are recoverable in this case; and d) on the facts of this case, VIWDA is the exclusive method of recovery for the decedent's estate.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 26, 1991, Joseph Mingolla, Sr. ("Mingolla, Sr.") suffered an injury when a titanium surgical pin, manufactured by 3M and inserted into his left femur in 1983, allegedly broke. He was 75 years old at the time. As a result of his injury, Mingolla, Sr. endured great pain and discomfort, lost full use of his left leg, and walked with a severe limp for the remainder of his life. He died of a heart attack a year later, on November 1, 1992, without filing suit for his injuries. Mingolla, Sr.'s widow and three adult children brought this action for products liability and wrongful death on October 22, 1993, claiming that the 3M pin was defectively designed and that this design defect was the proximate cause of Mingolla, Sr.'s death. In general, plaintiffs contend that the trauma caused by the allegedly defective 3M pin accelerated his demise by restricting his physical activity and by placing great physical and emotional stress on his heart and general health. At the time that the suit was filed, none of the plaintiffs had been appointed the personal representative of Mingolla, Sr. However, in December 1994, more than two years after his death, the Territorial Court appointed Joseph J. Mingolla II ("Mingolla, II"), the decedent's son, as personal representative of the Mingolla, Sr. estate.

The defendant filed a consolidated motion to dismiss for lack of personal jurisdiction, to dismiss for *forum non conveniens,* and to dismiss unactionable claims. At the hearing on this matter, the Court denied the first two prongs of defendant's motion, leaving only 3M's motion to dismiss unactionable claims under Fed.R.Civ.P. 12(b)(6), 12(c) and 56(c). The defendant raises four main arguments in this motion to dismiss: 1) since none of the plaintiffs had qualified as Mingolla, Sr.'s personal representative during the two-year limitations period, this suit is time barred; 2) Mingolla, Sr.'s children, Joseph J. Mingolla II, Mary Ann Whitney, and Kay Frances Wardrope ("the Mingolla children") should be dismissed from this case because they were not "survivors" as that term is defined by VIWDA; 3) attorneys fees and cost and punitive and exemplary damages are not recoverable under VIWDA; and 4) Mingolla, Sr.'s personal injury claims were abated by his death. For the reasons set forth below, 3M's motion to dismiss unactionable claims will be granted in part and denied in part.

## DISCUSSION

The standards for granting a Rule 12(b)(6) motion differ from those for granting a motion for judgment on the pleadings under Rule 12(c). In considering a motion to dismiss under FED.R.CIV.P. 12(b)(6), the Court accepts as true the well-pleaded allegations in the complaint. *Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 634 (3d Cir.1989); *Llanos v. Davis Beach Co.,* 26 V.I. 367, 372, 1991 WL 182248 (D.V.I.1991). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Llanos,* 26 V.I. at 372 (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). Judgment on the pleadings under FED.R.CIV.P. 12(c), on the other hand, is not proper unless the undenied facts in both the complaint and the answer support judgment for the moving party as a matter of law. *United States v. Blumenthal,* 4 V.I. 409, 411–12, 315 F.2d 351, 352–53 (3d Cir.1963); *Huntt v. Government of Virgin Islands,* 5 V.I. 166, 170, 339 F.2d 309, 311 (3d Cir.1964).

By contrast, a motion for summary judgment under FED.R.CIV.P. 56(c) can only be granted if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Clint Aero, Inc. v. Ground Services, Inc.,* 25 V.I. 446, 448, 754 F.Supp. 57, 58 (D.V.I.1990). A "material" fact is one that will affect the outcome of the suit under applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. *Ferris v. V.I. Industrial Gases, Inc.,* 23 V.I. 183, 188, 1987 WL 10225 (D.V.I.1987).

The moving party bears the initial burden of showing that no genuine issue of material fact exists. But once the movant properly supports a motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denial of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Any doubts are resolved in favor of the nonmoving party whose allegations are taken to be true. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984).

### A.

### *The Virgin Islands Wrongful Death Act*

These standards for summary judgment, judgment on the pleadings, and Rule 12(b)(6) dismissal must be measured against the governing, substantive law which is VIWDA in this case. It provides in relevant part:

> When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person ... and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person ... that would have been liable in damages if death had not ensued shall be liable for damages as specified in this section notwithstanding the death of the person injured. . . .

5 V.I.C. § 76(c). The primary purpose of this statute is to prevent a tort-feasor from evading responsibility for his conduct when such misconduct results in death.[1] VIWDA accomplishes this purpose by "shift[ing] the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer." 5 V.I.C. § 76(a). Toward this end, the Legislature has specifically provided that the provisions of VIWDA should be liberally construed. *Id.* Since VIWDA was copied almost verbatim from the Florida Wrongful Death Act, *Leonard v. Government of Virgin Islands,* 17 V.I. 169, 171 (1980), in the absence of relevant local case law, we

---

**1.** *Accord Variety Children's Hospital v. Perkins,* 445 So.2d 1010, 1012 (Fla.1983) (construing substantially similar Florida Wrongful Death Act).

look to the decisional law of Florida as a guide in construing its terms.

### B.

### Relation Back of Appointment of Personal Representative

■ The defendant first contends that plaintiffs lack standing to bring an action under VIWDA, because a wrongful death action must be brought by the personal representative of the decedent.[2] Also, since the Territorial Court did not appoint a personal representative for the Mingolla, Sr. estate until two years after his death, 3M argues that this suit is barred by the applicable statute of limitations,[3] despite plaintiffs' attempt to amend their complaint. Rule 15(c) of the FEDERAL RULES OF CIVIL PROCEDURE governs the relation back of amendments in this case:

> An Amendment of a pleading relates back to the date of the original pleading when
>
> . . . . .
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . .

FED.R.CIV.P. 15(c)(2). "The chief consideration in determining the applicability of the equitable doctrine of 'relation back' is prejudice to the opposing party." *In re Tutu Wells Contamination Litigation,* 846 F.Supp. 1243, 1260 (D.V.I.1993). Thus, where the proper defendant is put on notice of the plaintiff's claim and the opposing party is not prejudiced by the addition of parties or claims, the amendment will relate back to the commencement of the suit. *Id.; see also Martin v. Virgin Islands Nat'l Bank,* 455 F.2d 985, 986 (3d Cir.1972) (per curiam). The 1991 amendments to Rule 15(c) emphasize that this rule must be liberally construed and read in conjunction with the liberal pleadings practices of Rule 8. "The rule has been revised to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense." Notes of Advisory Committee on Rules 1991 Amendment.

■ Because it is factually similar to the case at bar, a case decided well before these 1991 amendments is nevertheless instructive. *See Russell v. New Amsterdam Cas. Co.,* 303 F.2d 674 (8th Cir.1962). There, as here, plaintiff filed a wrongful death action on her own behalf; however, the wrongful death statute of Nebraska, like VIWDA, required that such actions be brought by the legal representative of the deceased. Plaintiff later moved to amend her complaint solely to reflect the fact of her subsequent appointment as the decedent's legal representative, but this motion came after the two-year statute of limitations. *Id.* at 675. The trial court denied plaintiffs' motion and dismissed the complaint on the ground that it was barred by the two-year statute of limitations. After surveying the teachings of the United States Supreme Court and the law of various jurisdictions, the appellate court reversed:

> [U]nder the circumstances, the amendment did not introduce a new and different cause of action, but went to the right to pursue the same cause of action alleged in the original complaint; that the amendment was therefore procedural, bringing into play Rule 15(c) of the Federal Rules of Civil Procedure ... and [under Rule 15(c) ] the court improperly dismissed appellant's cause of action on the ground that it was barred by the statute of limitations.

*Id.* at 680–81.

On the facts of this case, it is clear that plaintiffs' amended complaint, which merely reflects Mingolla, II's appointment as personal representative, relates back to the commencement of this suit. The amended complaint does not assert new claims or causes of

---

**2.** The relevant portion of VIWDA provides:
The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this section, caused by the injury resulting in death.

5 V.I.C. § 76(d).

**3.** An action for wrongful death must be brought within two years from the date of death. *Cintron v. Bermudez,* 6 V.I. 692, 695 (D.V.I.1968).

action but merely reasserts the same "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." It is equally apparent that the defendant received notice of plaintiffs' claims well within the limitations period and is not prejudiced by the amendment.

## C.

### *Whether the Mingolla Children Can Assert Independent Claims for Recovery Under VIWDA*

The defendant next contends that the Mingolla children cannot recover for the wrongful death of their father because they were not "survivors" within the meaning of VIWDA. As therein defined, a survivor means "the decedent's spouse, minor children, parents, and when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters." "Minor children" are in turn defined as "unmarried children under eighteen (18) years of age." 5 V.I.C. § 76(b). Plaintiffs admit that none of the Mingolla children were "minor children" at the time of their father's death. But they argue that they may join in this wrongful death suit to assert their independent claims for relief—that is, claims, other than those the decedent could have asserted, for which the defendant is liable. *Leonard v. Government* supports plaintiffs' statement of the law.

 In that case, the Territorial Court held that although several survivors joined in the wrongful death action, "[each] survivor's injury is distinct from the victim's, and the survivor's right to sue for damages is independent of the right of the victim's estate to recover." *Leonard,* 17 V.I. at 173. By comparing VIWDA to its predecessor statute, that court found that VIWDA was intended to eliminate multiple suits arising out of the decedent's death by "[f]orcing all survivors[4] to assert their claims in a single lawsuit." *Id.* at 172. But, "[i]n requiring the joinder of all claims ... no intent to limit a survivor's right to recover was expressed by the Legis-

lature and none, therefore, should be inferred." Instead, the "clear legislative intent" was "to expand [a] survivor's rights to recover damages." *Id.* at 173. The court reasoned that VIWDA's joinder requirement was a "procedural reform that [was] totally consistent with Rule 42(a) of the FEDERAL RULES OF CIVIL PROCEDURE ... which permits consolidation of actions involving a common question of law or fact." *Id.* Thus, under VIWDA, any person with a claim arising out of the injury and death of the decedent must join in a wrongful death suit, even though they are not "survivors" as defined in that statute. It is equally clear that an individual so joined may assert her own claims independent of the decedent's claims, which VIWDA shifts to the decedent's estate. Although they are not "survivors" for purposes of VIWDA, therefore, the Mingolla children may join with the Mingolla, Sr. estate to assert their own, independent claims against 3M for their father's injury and death, if any exist.

## D.

### *Whether the Mingolla Children May Recover under Sections 402A, 436 or 436A of the RESTATEMENT*

Having concluded that the Mingolla children may assert their own independent claims for recovery, we find that those claims nevertheless fail as a matter of law. In essence, the Mingolla children claim that they suffered emotional distress by viewing the agony and diminution of their vital, active father. They further contend that 3M is strictly liable for the emotional harm that they suffered by virtue of the RESTATEMENT (SECOND) OF TORTS §§ 402A, 436, and 436A (1965), citing as support, *Walters v. Mintec/International,* 758 F.2d 73 (3d Cir.1985).

 These arguments have no merit. First and foremost, section 402A permits only ultimate users and consumers of a product to bring a cause of action for strict liability.[5] The Mingolla children have not

---

4. The thrust of *Leonard* leaves little doubt that the court used the term "survivors" in its generic

sense and not with the specific meaning as defined in VIWDA.

5. Section 402A provides that "[o]ne who sells

alleged, nor can they assert, that they were users of the allegedly defective 3M pin. Second, sections 436 and 436A are inapplicable in the strict liability context. *Mintec/International,* 758 F.2d at 77.[6] Third, even if we were to construe plaintiffs' complaint as alleging mutually exclusive, alternative theories of recovery (strict liability and negligence) on behalf of the Mingolla children, their claims under section 436 would still fail.[7] In order for plaintiffs to recover for the tort of negligent infliction of emotional distress under section 436, the defendant's negligent conduct must have placed plaintiffs in danger for their own safety,[8] and they must have suffered bodily harm as a result of their emotional disturbance. Certainly, 3M's manufacture of an allegedly defective pin never threatened the Mingolla children with bodily harm, and even though they claim to have been emotionally disturbed by their father's injury and subsequent death, their complaint fails to allege any physical harm that resulted from this disturbance. Likewise, under section 436A, "the negligent actor is not liable when his conduct results in emotional disturbance alone, without the bodily harm or other compensable damages."[9] As a matter of law, therefore, the Mingolla children may not recover under sections 402A, 436, and/or 436A of the RESTATEMENT. Accordingly, the Court will dismiss these claims.

### E.

### *Whether Punitive Damages and Attorney's Costs and Fees are Recoverable Under VIWDA*

■ The defendant's third argument, that punitive damages and attorney's costs and fees can never be recovered in a VIWDA suit, is overbroad. While it is true that these forms of relief are prohibited in a pure wrongful death suit,[10] depending on the theory of recovery, they may be awarded to a survivor or beneficiary who succeeds on an independent claim for relief. Had the Mingolla children succeeded on their sections 402A or 436 claims, for instance, they may have been entitled to recover the attorney's fees and costs associated with those claims, even though these claims were consolidated in a VIWDA suit.

Because the Court has dismissed the independent claims of the Mingolla children, however, plaintiffs are left with a pure wrongful

---

any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused **to the ultimate user or consumer....** " RESTATEMENT (SECOND) OF TORTS § 402A(1) (1965) (emphasis added).

6. Plaintiffs' reliance on *Mintec/International,* 758 F.2d 73 (3d Cir.1985), is seriously misplaced. That case actually stands for a proposition contrary to that asserted by the Mingolla children. The United States Court of Appeals for the Third Circuit there ruled that a products liability plaintiff can recover for physical harm resulting from emotional disturbance under section 402A if the requirements for legal causation under section 436 are met. *Id.* at 79. Yet, the facts in that case make it readily distinguishable from the matter before us: both plaintiffs were end users of the defective loading crane that collapsed and caused their injuries; the section 436 plaintiff was himself in the zone of danger at the time of the accident; and the section 436 plaintiff suffered bodily harm as a result of his emotional disturbance. *Id.* at 75, 78. The court agreed that section 436 was inapplicable in the strict liability context but looked to that section for guidance in interpreting the "physical harm" requirement of section 402A. *Id.* at 77. *Mintec/International* clearly does not support plain-

tiffs' proposition that one who does not use a product may succeed on a products liability claim for emotional disturbance alone.

7. Section 436(2) reads:

(2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability. RESTATEMENT (SECOND) OF TORTS § 436(2) (1965).

8. RESTATEMENT (SECOND) OF TORTS § 436 cmt. f (1965).

9. RESTATEMENT (SECOND) OF TORTS § 436A cmt. a (1965).

10. *See Boyd v. Atlas Motor Inn, Inc.,* 16 V.I. 367, 369–71 (D.V.I.1979) (holding that punitive damages are not recoverable under VIWDA). Also, under the statutory scheme, attorney's fees and other expenses of litigation are to be paid by the personal representative and deducted from the awards to the survivors and to the estate. 5 V.I.C. § 76(j).

death action; the only remaining claims are those of Mingolla Sr.'s widow and the Mingolla, Sr. estate under VIWDA. Punitive damages and attorney's fees and costs are therefore not recoverable in this case.

### F.

### *Whether VIWDA is the Exclusive Method of Recovery for the Mingolla, Sr. Estate*

The defendant's final argument, that the Mingolla, Sr. estate is limited to recovery under VIWDA, requires that we unravel a puzzling area of wrongful death law. The confusion in this field is attributable to the existence of two seemingly conflicting statutes—VIWDA and the V.I. Survival Statute, 5 V.I.C. § 77. The relevant section of VIWDA reads:

> When a personal injury to the decedent **results in his death,** no action for the personal injury shall survive, and any such action pending at the time of death shall abate.

5 V.I.C. § 76(d) (emphasis added). Yet, the survival statute provides that:

> A thing in action arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, **nor by reason of the death of the person injured** or of any other person who owns any such thing in action.... The damages recovered shall form part of the estate of the deceased.

5 V.I.C. § 77 (emphasis added). The defendant contends that any tort actions that Mingolla, Sr. could have brought while alive are now statutorily abated because he did not file suit before his death.

While we agree with defendants that Mingolla, Sr.'s estate may not recover under the survival statute, we do so on different grounds. The V.I. wrongful death and survival statutes create distinct causes of action. *Accord Poole v. Tallahassee Memorial Hosp., Medical Center, Inc.,* 520 So.2d 627, 630 n. 1 (Fla.Dist.Ct.App.1988) (construing identical provision of the Florida Wrongful Death Act). Unlike a VIWDA action, the plaintiff in a survival action for personal injuries need not allege that the personal injuries of the decedent resulted in his death. The survival plaintiff simply seeks recovery for the pre-death injuries which generally are not related to the decedent's death. The survivors of a person injured in a fall, for instance, who later dies of cancer, may bring a cause of action under the survival statute even though they may not have a claim under VIWDA.

When the injury to the decedent **results in his death,** however, the survivors must prosecute their claims in a VIWDA suit. In enacting VIWDA, the Legislature intended to put an end to multiple lawsuits under the survival statute for "death-resulting" personal injuries. Sections 76(d) and 76(e) were designed to force all survivors and beneficiaries to pursue an action for personal injuries **resulting in death** under VIWDA exclusively. However, where plaintiffs seek to recover damages for the decedent but the relationship between the injury and death is tenuous or uncertain, such as when there is an intervening cause of death, the survivors must consolidate any claims on behalf of the decedent under the survival statute with the estate's VIWDA claims. Under these circumstances, VIWDA allows plaintiffs to "hedge their bets" by pleading alternative, inconsistent causes of action—a cause of action under the survival statute (which assumes that plaintiff's injuries did not result in his death) and a cause of action under VIWDA (for injuries **resulting** in the decedent's death).[11] Plaintiffs may recover on

11. Florida courts have had occasion to resolve a similar conflict between their wrongful death and survival statutes in a manner that we find persuasive. In construing an identical provision of the Florida Wrongful Death Act, Fla.Stat.Ann. § 768.20 (West 1995), Florida courts have uniformly held that a survivor may prosecute claims under both the wrongful death and survival stat-

utes in a single, wrongful death action under certain circumstances. *Martin v. United Sec. Services, Inc.,* 314 So.2d 765, 770 (Fla.1975); *Smith v. Lusk,* 356 So.2d 1309, 1311 (Fla.Dist.Ct.App. 1978); *Poole v. Tallahassee,* 520 So.2d 627, 630 n. 1 (Fla.Dist.Ct.App.1988).

*Smith v. Lusk* illustrates the interaction of the wrongful death and survival statutes. In that

only one cause of action, however. Indeed, the principles of *res judicata* and collateral estoppel would seem to compel such consolidation.

 Unfortunately for Mingolla, Sr.'s estate, any claims that he may have asserted for the breakage of the allegedly defective 3M pin expired on October 26, 1993, when the two-year statute of limitations ran. And we do not read plaintiffs' complaint to assert an alternative cause of action under the V.I. survival statute. As such, any claims under the survival statute that Mingolla Sr.'s estate may have brought for the allegedly defective 3M pin are time-barred.[12]

Accordingly, the defendant's motion to dismiss unactionable claims will be granted in part and denied in part. A separate order follows.

### ORDER

Upon consideration of the premises, the Court being duly advised, and for the reasons set forth in the Court's Memorandum of even date, it is hereby

**ORDERED** that the appointment of Joseph Mingolla, II as personal representative of the Joseph Mingolla, Sr. Estate relates back to the commencement of this suit under FED.R.CIV.P. 15(c)(2); and it is further

**ORDERED** that the independent claims of Joseph Mingolla, II, Mary Ann Whitney, and Kay Frances Wardrope (the Mingolla children) are **DISMISSED** pursuant to FED. R.CIV.P. 12(b)(6); and it is further

**ORDERED** that plaintiffs may not recover punitive damages nor attorney's fees and costs in this suit; and it is further

**ORDERED** that any personal injury claims of Joseph Mingolla, Sr. that may have been brought under 5 V.I.C. § 77 are time-barred.

---

case, two sons, as personal representatives of their mother, filed a two-count complaint after their mother died. Although their mother was involved in an automobile accident with defendant two months before her death, the evidence indicated that their mother died of leukemia. Count I of plaintiffs' complaint was a survival action seeking to recover for the injuries sustained by Mrs. Smith which did not result in her death; Count II stated an action for wrongful death, wherein it was alleged that their mother's death was caused directly by the negligence of the defendant. *Smith v. Lusk*, 356 So.2d at 1310. The appellate court found that plaintiffs' complaint "classically sets up inconsistent and alternative pleadings" which is a "time honored practice." *Id.* at 1311. Thus, under Florida law, plaintiffs are allowed to present mutually exclusive, alternative theories of recovery but may recover on only one. *See id.; Poole v. Tallahassee*, 520 So.2d at 630 n. 1.

**12.** The defendant would have us rule that the V.I. survival statute requires the decedent to file a suit for personal injuries before his death in order for it to survive. We decline to address this issue because it is not essential to the resolution of this case.